# In the United States Court of Federal Claims

No. 19-1022C

(Filed:  August 12, 2019)

| | |
|---|---|
| **THE STATE OF OKLAHOMA,** *et al.*, | Application for a temporary restraining order; motion to dismiss for lack of subject matter jurisdiction; 28 U.S.C. § 1500; the Randolph-Sheppard Act, 20 U.S.C. §§ 107-107f; requirements for a temporary restraining order |
| Plaintiffs, | |
| and | |
| **CANTU SERVICES, INC.,** | |
| Plaintiff-Intervenor, | |
| and | |
| **DAVID ALTSTATT, SR.,** | |
| Plaintiff-Intervenor, | |
| v. | |
| **UNITED STATES,** | |
| Defendant, | |
| and | |
| **MITCHCO INTERNATIONAL, INC.,** | |
| Defendant-Intervenor. | |

Peter A. Nolan, Winstead PC, Austin, Texas, for plaintiffs the State of Oklahoma and the Oklahoma Department of Rehabilitation Services.  Of counsel was Richard Olderbak, Assistant Attorney General, Oklahoma Office of the Attorney General, Oklahoma City, Oklahoma.

John C. Dulske, Dykema Gossett, San Antonio, Texas for plaintiff-intervenor Cantu Services, Inc.

Casey T. Delaney, Fellers, Snider, Blankenship, Bailey & Tippens, PC, Oklahoma City, Oklahoma for plaintiff-intervenor David Altstatt, Sr.

Douglas T. Hoffman, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for defendant.  With him on the briefs were Joseph H. Hunt, Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director and Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, United States Department of Justice, Washington, D.C.  Of counsel was Major Ronald M. Hermann, Trial Attorney, United State Army Legal Services Agency, Fort Belvoir, Virginia.

Alan Grayson, Washington, D.C., for defendant-intervenor Mitchco International, Inc.

## OPINION AND ORDER

LETTOW, Senior Judge.

This case presents a jurisdictional tangle which has to be addressed before considering an application for a temporary restraining order ("TRO") filed July 16, 2019, by plaintiffs the State of Oklahoma and the Oklahoma Department of Rehabilitation Services (collectively "Oklahoma" or "ODRS" or "the Oklahoma Department"). *See* Pls.' Appl. for TRO and Mot. for a Prelim. Inj. ("Pls.' Appl."), ECF No. 6; *see also* Compl.; Mem. in Supp. of Pls.' Appl. for TRO & Mot. for Prelim. Inj. ("Pls.' Mem."), ECF No. 7. This is a post-award bid protest, filed by ODRS on July 16, 2019. *See* Compl. A hearing was held on July 17, 2019, with the court ordering expedited briefing on jurisdictional aspects underpinning the application. *See* Scheduling Order (July 17, 2019), ECF No. 16. That briefing has been completed.

The contract at issue is for food services at the United States Army base at Fort Sill, Oklahoma. The incumbent contractor has been the Oklahoma Department of Rehabilitation Services, a "state governmental agency responsible for assisting people whose disabilities create barriers to employment." First Am. Compl. ¶ 1. The Oklahoma Department has been acting to fulfill the contract through Cantu Services, Inc. ("Cantu"), a certified small business incorporated in Texas, and Mr. David Altstatt, Sr. as the licensed blind manager for the contract. Compl. ¶ 3. That contract was awarded under the Randolph-Sheppard Act ("RSA"), 20 U.S.C. §§ 107-107f, and the entwined procedural web relates to jurisdictional requirements of disputes arising under that Act juxtaposed with this court's bid protest jurisdiction under the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, § 12, 110 Stat. 3870, 3874 (revising 28 U.S.C. § 1491 (b)). Based upon a new solicitation, the Army rejected ODRS' bid and awarded the Fort Sill food service contract to Mitchco International, Inc. ("Mitchco"), an entity not qualified under the Randolph-Sheppard Act.

Soon after the initial hearing, Cantu Services, Inc. ("Cantu") and David Altstatt, Sr. filed separate motions to intervene as plaintiffs. Mots. to Intervene, ECF Nos. 14, 17. As Cantu and Mr. Altstatt have both been a part of the ODRS Fort Sill service team, the court granted both motions and allowed the parties to join the litigation as plaintiff-intervenors. *See* Order Granting Mot. to Intervene, ECF No. 15; Order Granting Mot. for David Altstatt, Sr. to Intervene as Pl., ECF No. 18. Relatedly, Mitchco, the current awardee of the contract, was permitted to intervene as a defendant. Order Granting Mot. to Intervene, ECF No. 21.

The government and Mitchco filed responses to the Oklahoma Department's TRO application on July 23, 2019, Def.'s Mot. to Dismiss & Resp. to Pl.'s [Appl.] for TRO ("Def.'s Mot."), ECF No. 25; Mitchco's Opp'n to Pl.'s Appl. for TRO & Inj. Relief ("Mitchco's Opp'n"), ECF No 24, and concurrently the government also moved to dismiss the complaint on jurisdictional grounds, Def.'s Mot. Mitchco filed a motion to dismiss a day later, on July 24, 2019. Mitchco's Mot. to Dismiss ("Mitchco's Mot."), ECF No. 29. The Oklahoma Department filed an amended complaint on July 26, 2019, First Am. Compl. ("Am. Compl."), ECF No. 31, and plaintiffs filed a response to defendants' motion to dismiss on July 29, 2019, J. Resp. to

[Def.'s Mot.] & Reply in Supp. TRO ("Pls.' Resp."), ECF No 34.   A second hearing was held on July 31, 2019.  Hr'g Tr. (July 31, 2019).[1]

In its original complaint, the Oklahoma Department raised claims under the Randolph-Sheppard Act as well as under the Tucker Act, and sought a temporary restraining order enjoining the award to Mitchco and contract performance "until such time this protest is resolved and the pending Department of Education arbitration between [ODRS] and the Army has been completed and an arbitration award has been issued."  Pls.' Appl. at 4.  The reference to arbitration refers to a request for arbitration made to the United States Department of Education ("Education Department") by Oklahoma under the Randolph-Sheppard Act, invoking a remedy provided under that Act.  *See* Compl. ¶¶ 17, 32.  In an amended complaint, The Oklahoma Department omitted any reliance on the Randolph-Sheppard Act, and it advances four purely bid protest claims against the government: (1) the price ceiling used in the solicitation resulted in a "prejudicially unequal" competition, Am. Compl. ¶¶ 46-54; (2) the Army's evaluation of Mitchco's technical proposal was unreasonable and inconsistent with the stated evaluation criteria, Am. Compl. ¶¶ 55-68; (3) the Army's evaluation of Mitchco's price proposal was also unreasonable and inconsistent with the stated evaluation criteria, Am. Compl. ¶¶ 69-74; and (4) the Army's recent decision to proceed with contract performance "confirms" that the Army will not comply with the Department of Education's arbitration panel's decision, Am. Compl. ¶¶ 75-82.

# BACKGROUND

At the start of 2018, ODRS was the incumbent contractor providing full food services to Fort Sill, and was in the first of four option years, Am. Compl. ¶ 23.  In early 2018, however, the government informed ODRS that it would not be exercising the contract's remaining option years and would instead solicit new bids.  Am. Compl. ¶ 24.  As there were still three unexpired option years remaining on the contract, ODRS filed a demand for arbitration with the Department of Education on April 19, 2018, alleging violations of the Randolph-Sheppard Act.[2]  Compl. ¶ 17; *see also* Pl.'s Appl. Ex. 1 at 6-7.[3]

Despite ODRS' arbitration request, the Army released a new solicitation for bids on August 31, 2019.  Am. Compl. ¶ 26.  ODRS filed a timely protest with the Government

---

[1]Subsequent citations to the hearing on July 31, 2019, will omit the date.

[2]The Randolph-Sheppard Act, 20 U.S.C. §§ 107-107f, mandates that special priority be given to blind persons who bid for contracts to provide vending facilities services on federal property.  *See Kentucky, Educ. Cabinet, Dept. for the Blind v. United States*, 424 F.3d 1222, 1223-24 (Fed. Cir. 2005); *see also* 20 U.S.C. § 107(b).  If dissatisfied with the action of an agency of the United States respecting a failure to comply with this priority, a state licensing agency may file an arbitral complaint with the Department of Education.  *See* 20 U.S.C. § 107d-1(b).

[3]As the exhibits to plaintiff's application are not paginated, the page number referenced will refer to the assigned Electronic Case Filing number.

Accountability Office ("GAO") on September 21, 2018, Am. Compl. ¶ 27; *see also State of Oklahoma*, B-416851.2 (Comp. Gen. Oct. 26, 2018), challenging "certain defects and ambiguities" in the Army's solicitation, Am. Compl. ¶ 27.  In response, the Army announced it would take corrective action and amend the solicitation.  Am. Compl. ¶ 28.  GAO then dismissed the protest. Am. Compl. ¶ 28.  At the time, ODRS' arbitration demand with the Education Department was still pending.

The Army then amended the solicitation on November 9, 2018.  Am. Compl. ¶ 29.  The amended solicitation stated the Randolph-Sheppard Act applied to the procurement and that any state licensing agency within the competitive range "will be afforded the priority."  Pl.'s Appl. Ex. 4-1 at 32.  Despite the Army's corrective action, ODRS found the amended solicitation to be deficient in several areas.  Compl. ¶ 23.  On November 29, 2018, ODRS amended its arbitration demands with the Education Department to "assert several solicitation defects," specifically the alleged use of "a misleading and irrational price ceiling capping proposed prices at $111 [million]."  Am. Compl. ¶ 31.  The Army issued a further amendment to the solicitation on December 3, 2018, addressing in part ODRS' claims.  Am. Compl. ¶ 29.

In light of the Army's continuing the procurement despite ODRS' protestations to the Department of Education and GAO, ODRS filed a complaint in the district court for the Western District of Oklahoma on December 11, 2018, seeking a temporary restraining order and injunctive relief.  Am. Compl. ¶ 32.[4]  ODRS sought to enjoin the Army from proceeding until the Department of Education could rule on the pending arbitration request.  Am. Compl. ¶ 32.  On December 17, 2018, the district court denied ODRS' TRO request.  Am. Compl. ¶ 33; *see also*

---

[4]Decisions by an arbitration panel convened by the Department of Education under the Randolph-Sheppard Act are "subject to appeal and review as a final agency action" pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-06.  20 U.S.C. § 107d-2.  Unless a particular court is specified by statute, final agency actions are reviewable by any "court of competent jurisdiction."  5 U.S.C. § 703.  As the Randolph-Sheppard Act does not delineate a particular court, any federal district court with personal jurisdiction over the parties may hear a complaint for review of the arbitration panel's decision.  The jurisdiction of a district court could be invoked under the federal question statute, 28 U.S.C. § 1331.

In addition, the arbitration requirements of the Randolph-Sheppard Act are not jurisdictional in nature.  *See Kansas ex rel. Kansas Dep't of Children & Families v. SourceAmerica*, 874 F.3d 1226, 1246-52 (10th Cir. 2017).  In other words, although arbitration may be a mandatory administrative requirement, this does not bar a district court from hearing certain claims before exhaustion of administrative remedies, *i.e.*, a decision by the arbitration panel.  *Id.*  Both the Tenth and Sixth Circuits have found that district courts have jurisdiction to enter preliminary injunctive relief despite pending arbitration based on the "irreparable harm exception."  *Id.* ("[R]equring [the State to complete] arbitration before challenging the Army's decision not to apply the [Randolph-Sheppard Act] would have resulted in . . . an irreparable harm."); *see also Kentucky v. United States ex rel. Hagel*, 759 F.3d 588, 597-601 (6th Cir. 2014).

 Consequently, the district court had jurisdiction over ODRS' TRO request and presumably the district court would maintain jurisdiction to review the outcome of the Department of Education arbitration panel.

Order of Dec. 17, 2018, *Oklahoma ex rel. Oklahoma Dep't of Rehabilitation Servs. v. United States ex rel. Mattis*, No. 5:18-cv-1197, ECF No. 10 (W.D. Okla. Dec. 17, 2018) ("District Ct. Order"). In the order, the district court found that ODRS' TRO application would not "maintain the status quo," but rather would "accomplish its ultimate litigation objective." District Ct. Order at 5. The district court found that a TRO "would not be a proper use of the [c]ourt's equitable powers as it would be allowing 'a suit for a traditional injunction in the abstract.'" *Id.* (citing *Alabama v. United States Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005)).

The district court also found that "ODRS cannot show a substantial likelihood of success on the merits" of its claim. District Ct. Order at 7. First, the court found ODRS' argument about the language of 20 U.S.C. § 107(b) to be unpersuasive. Rather than agreeing with ODRS that the Army's declining the third-year option imposed a "limitation" prohibited by 20 U.S.C. § 107(b), the court found "the general rule for an option seems to apply." *Id.* at 8. In that respect, an option contract allows the holder of the option discretion whether to exercise that option. Second, the court disagreed with ODRS' argument, based on 34 C.F.R. § 395.33(a), that the Army was required to consult with the Education Department before acting adversely to ODRS. *Id.* at 8-9 ("ODRS'[] proposed order of actions makes no sense in light of the conditional language used by the regulation that requires consultation only after an initial judgment by the Army."). Third, and finally, the court found that 34 C.F.R. § 395.33(a) did not impose a price floor, but instead held that "a common-sense reading of the regulation is that the 'reasonable cost' requirement instead imposes a price ceiling." *Id.* at 9.

In response to the district court's decision, on December 18, 2019, ODRS filed an agency level protest "objecting to various terms of the amended [s]olicitation," specifically the use of a price ceiling. Am. Compl. ¶ 34; *see also* Def.'s Mot. App. at DA22 (Decl. of Gary L. Stevens, Contracting Officer). ODRS also filed a timely bid with the Agency the following day. Am. Compl. ¶ 35.

ODRS' agency level protest was denied on January 23, 2019. Am. Compl. ¶ 36; Def.'s Mot. App. at DA22. On March 14, 2019, the Army informed ODRS that it was being excluded from the competitive range. Am. Compl. ¶ 37; Def.'s Mot. App. at DA22. According to a letter dated March 22, 2019, ODRS was excluded due to an "unacceptable rating for . . . past performance, and an unreasonably high price." Def.'s Mot. App. at DA22; *see also* Am. Compl. ¶ 37.

Following its exclusion from the competitive range, ODRS filed an amended arbitration demand with the Education Department on March 22, 2019, now seeking to be "placed back into the competitive range." Am. Compl. ¶ 38. In addition, on March 25, 2019, ODRS amended its prior complaint for a TRO and a preliminary injunction with the district court, reciting the Army's decision to exclude it from the competitive range and again seeking to prevent the Army from taking any further action on the procurement. Def.'s Mot. App. at DA22; *see also id.* at DA11 (district court's docket). The Army signed a bridge contract with ODRS the next day, March 26, 2019, covering a period of performance from April 1, 2019 to May 31, 2019, with a six-month option period. Am. Compl. ¶ 39. The district court held another hearing on March 28, 2019. Def.'s Mot. App. at DA11.

On April 12, 2019, the Department of Education agreed to convene an arbitration panel to hear ODRS' claims. Def.'s Mot. App. at DA14 (Departmental letter authorizing arbitration).

Specifically, the Department of Education would determine through a three-person *ad hoc* arbitration panel if the Army violated the RSA by: (1) not exercising the third option year; and (2) excluding ODRS from the competitive range. *Id.* at DA15, DA17.

On April 16, 2019, the district court again denied ODRS' renewed application for a TRO. Order of Apr. 16, 2019, *Oklahoma ex rel. Oklahoma Dep't of Rehabilitation Servs.* ("District Ct. Apr. Order"), ECF No. 23. Unlike the prior order denying ODRS' application for a TRO, however, the district court also denied ODRS' motion for a preliminary injunction. *Id.* at 14. The district court first found that "the basis for [the court] to act does not come into play until after arbitration," and until arbitration "no ripe cause of action exists upon which an injunctive relief request can rely." *Id.* at 8. Yet, even if the case had been ripe, the district court opined that "ODRS [] cannot demonstrate a likelihood of success on the merits." *Id.* at 9. The district court determined that many of the arguments in ODRS' first amended complaint were identical to those in its original complaint, and thus the district court declined to "re-address[]" these arguments, as the "[c]ourt's ruling regarding them remains the same." *Id.* at 9 (citing District Ct. Order).

ODRS had, however, advanced new arguments in its first amended complaint before the district court. First, "ODRS argue[d] that a TRO should [be] issue[d] because the Army improperly excluded ODRS from the competitive range established in the bid process for the new contract." District Ct. Apr. Order at 9. But the district court found that ODRS' "attempted explanation . . . and []testimony" in support of its argument "were both conclusory and [not] sufficient for [] ODRS to meet its burden to obtain a TRO." *Id.* at 10. Second, ODRS argued "that it [would] succeed on the merits because the Army was required, and failed, to consult with the [Education Department] before excluding ODRS from the competitive range in the bid process." *Id.* at 10-11. The district court was similarly unpersuaded by this argument, as "ODRS provides no authority that this process was intended by the [RSA]," among other reasons. *Id.* at 11-12.

Following the district court's denial of ODRS' application for a TRO and a preliminary injunction, the Army awarded the contract to Mitchco on either April 16 or 17, 2019. *See* Am. Compl. ¶ 41 (stating the award date as April 17, 2019); Def.'s Mot. App. at DA23 (stating the award date as April 16, 2019). But due to a GAO pre-award protest brought by another offeror, the contract was terminated on the same day and the award to Mitchco was stayed. Def.'s Mot. App. at DA23. ODRS filed its pre-award protest with GAO on April 26, 2019. *Id.*; *see also State of Oklahoma*, B-416851.5 (Comp. Gen. May 9, 2019). GAO dismissed all pending pre-award protests, including ODRS', on May 15, 2019. Def.'s Mot. App. at DA23. The government then re-awarded the contract to Mitchco on May 16, 2019, *id.*, and ODRS filed a post-award protest with GAO on May 23, 2019, *id.*; *see also State of Oklahoma*, B-416851.6 (Comp. Gen. July 3, 2019).

Due to the nature of the procurement, the Army "unilaterally" exercised three months (out of six) of the optional bridge contract on May 24, 2019 and issued a stop work order on May 28. Am. Compl. ¶ 43; Def.'s Mot. App. at DA23. ODRS then filed supplemental protests with GAO on June 7, 2019, and June 14, 2019. Am. Compl. ¶ 42; *see also State of Oklahoma*, B-416851.7 (Comp. Gen. July 3, 2019); *State of Oklahoma*, B-416851.8 (Comp. Gen. July 3, 2019). ODRS' first supplemental protest (B-416851.7), filed June 7, 2019, alleged that a second offeror in the competitive range "should have been found non-responsible." Def.'s Mot. App. at

DA23.  The second supplemental protest (B-416851.8) filed by ODRS alleged that the second offeror in the competitive range "should have been found unacceptable under the technical factor," rather than non-responsible, as ODRS originally averred.  *Id.* at DA24.  As a result, ODRS withdrew its first supplemental protest.  *Id.*

GAO dismissed ODRS' post-award protests on July 3, 2019.  Def.'s Mot. App. at DA24; Am. Compl. ¶ 44; *see State of Oklahoma*, B-416851.8 (Comp. Gen. July 3, 2019).  In response, the Army decided to resume work on the contract, planning to phase-in Mitchco from July 18, 2019, to August 31, 2019.  Def.'s Mot. App. at DA24.  ODRS was notified of the Army's phase-in plans on July 12, 2019 and filed suit in this court on July 17, 2019.  *Id.*; Am. Compl. ¶ 45.

## STANDARDS FOR DECISION

### A.  *Rule 12(b)(1) - Lack of Subject-Matter Jurisdiction*

The Tucker Act, as amended by the Administrative Dispute Resolution Act, provides this court with jurisdiction for "an action by an interested party objecting to a solicitation by a [f]ederal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any violation of a statute regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1).  But for the Randolph-Sheppard Act, this case jurisdictionally would be a standard post-award bid protest.  The separate jurisdictional and remedial scheme of the Randolph-Sheppard Act, however, introduces considerable complexity. In that Act, Congress established a particular right and administrative remedy – arbitration at the Department of Education – to address disputes arising under the Act.  *See, e.g.*, 20 U.S.C. § 107d-1; *Kentucky*, 424 F.3d at 1227-29; *Randolph-Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 101-05 (D.C. Cir. 1986).  As the Federal Circuit held in *Kentucky*, when a state licensing agency such as ODRS "decides to complain of a violation of the RSA . . . it must do so through the arbitration process," and if it does "not exhaust that mandatory administrative remedy, [then] the Court of Federal Claims . . . lack[s] jurisdiction."  *Kentucky*, 424 F.3d at 1227, 1229.  Because ODRS has invoked arbitration under the Randolph-Sheppard Act, and that arbitral process is still underway, this court's jurisdiction over ODRS' post-award bid protest is at issue.

ODRS, as plaintiff, must establish jurisdiction by a preponderance of the evidence. *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)).  When ruling on the government's motion to dismiss for lack of jurisdiction, the court must "accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff."  *Id.* at 1163 (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)). When the parties dispute alleged facts bearing upon jurisdiction, the court "may weigh relevant evidence."  *Mildenberger v. United States*, 643 F.3d 938, 944 (Fed. Cir. 2011) (quoting *Ferreiro v. United States*, 350 F.3d 1318, 1324 (Fed. Cir. 2003)).  "If a court lacks jurisdiction to decide the merits of a case, dismissal is required as a matter of law."  *Gray v. United States*, 69 Fed. Cl. 95, 98 (2005) (citing *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868); *Thoen v. United States*, 765 F.2d 1110, 1116 (Fed. Cir. 1985)); *see also* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## ANALYSIS

## I.   JURISDICTION

If the court has jurisdiction over an action, it has authority under Rule 65(b) of the Rules of the Court of Federal Claims ("RCFC") to issue a temporary restraining order.  The order must "state the reasons why it issued;" "state its terms specifically;" "and describe in reasonable detail . . . the act or acts restrained or required."  RCFC 65(d)(1).

### A.  *28 U.S.C. § 1500*

The government first argues that 28 U.S.C. § 1500 bars the court from hearing the claims of ODRS.  *See* Def.'s Mot. at 7-9.  Section 1500 states, in relevant part, that the Court of Federal Claims "shall not have jurisdiction of any claim for or in respect to which the plaintiff [] has pending in any other court any suit or process against the United States."  The Supreme Court has held that Section 1500 is "a significant jurisdictional limitation . . . [designed] to curtail[] redundant litigation."  *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 314 (2011).  The limitation applies where two suits "are based on substantially the same operative facts regardless of the relief sought in each suit."  *Id.* at 317.  Thus, similarities or the same general subject matter do no suffice to trigger Section 1500.  Rather, the specific facts at issue in the suits are determinative.  *See, e.g., id.* ("[T]he question is whether [] two suits have sufficient factual overlap."); *Beberman v. United States*, 755 Fed. Appx. 973, 979-80 (Fed. Cir. 2018) (finding although there were similarities between two cases in two different courts, the "facts [separately at issue in the two suits] do not provide enough overlap to conclude that the claims arise from substantially the same operative facts").  The Federal Circuit has articulated two factors to determine if 28 U.S.C. § 1500 applies: "(1) whether there is an earlier filed 'suit or process' pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action."  *Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013) (quoting *Trusted Integration*, 659 F.3d at 1163-64 (in turn citing *Tohono*, 563 U.S. at 313-15)).

According to the government, "ODRS has run afoul of Section 1500" because "it filed a complaint in the Western District of Oklahoma . . . and, [] the complaint raised the same price-ceiling issue that ODRS raises before this [c]ourt."  Def.'s Mot. at 9 (citing Pls.' Mem. at 7, n.1).  Put differently, the government contends that ODRS cannot bring a case in this court because it has a case that arises from the same operative facts currently pending before the district court, even if the claims themselves are distinct.

ODRS relies on its amended complaint, which removed certain claims touching on the Randolph-Sheppard Act, to counter that its "post-award procurement issues involve different operative facts and issues" than those at issue in the district court, and Section 1500 "does not preclude Tucker Act jurisdiction."  Pls.' Resp. at 3 (some capitalizations removed).  It contends that Counts 2-4 of its amended complaint "were not asserted in the district court action" as "the operable facts related to and arising from [these counts] did not exist at the time ODRS filed its district court action."  *Id.* at 3, 5.  As for Count 1, ODRS avers although it initially brought "two challenges to the [Army's] inclusion of an arbitrary and misleading price ceiling in the [s]olcitiation," it withdrew the challenge that related to the RSA in its first amended complaint.  *Id.* at 4.

There is no doubt that there is another "earlier filed 'suit or process' pending in another court." *Brandt*, 710 F.3d at 1374. But, ODRS attempts to thread the jurisdictional needle by partitioning its claims, sending those based on the Randolph-Sheppard Act to the district court and those based on its post-award protest to this court, claiming that the two have two distinct factual backgrounds. The court finds that although the question is close, ODRS has succeeded with regards to Section 1500. The claims before *this* court would require the production of an administrative record and for the court to conduct findings of fact based on that record to determine if violations of federal procurement law occurred. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (specifying that bid protest proceedings "provide for trial on a paper record, allowing fact-finding by the trial court"). By contrast, the claims before the district court will require post-arbitral decision proceedings reflecting different evidence to determine if the Army violated the Randolph-Sheppard Act. *See, e.g.*, *United States v. Mississippi Vocational Rehab. for the Blind*, 794 F. Supp. 1344, 1347-49 (S.D. Miss. 1992) (addressing various findings of fact about the facility, its history of using blind vendors, and alleged violations of the Randolph-Sheppard Act). Some overlap of underlying facts will be in inevitable due to the parallel nature of the two suits. But the court does not find this overlap to be substantial enough to invoke Section 1500.

Notably, however, ODRS failed to inform the court that although its claims related to the procurement arose subsequent to the filing of its original December compliant with the district court, it filed an amended complaint with the district court on March 25, 2019. *See First Am. Compl. & Req. for TRO & Inj. Relief*, *Oklahoma ex rel. Oklahoma Dep't for Rehabilitation Servs.*, ("District Ct. Am. Compl."), ECF No. 12. In this amended complaint, ODRS raised several arguments about the solicitation and the Army's alleged failures under it. *See, e.g.*, District Ct. Am. Compl. ¶¶ 55-74. Even so, each of the issues raised by ODRS in that amended complaint was firmly rooted in the Randolph-Sheppard Act. For example, ODRS alleged that the "Army's failure to follow the stated evaluation criteria in evaluating ODRS['] proposal constitutes a violation of the [RSA]." District Cl. Am. Compl. at 15 (some capitalization removed). Thus, the court's analysis remains the same.

Therefore, although the operative facts between the two cases may share some similarities, the court concludes there is sufficient factual differentiation in the cases for ODRS to avoid the jurisdictional bar of Section 1500. The claims before this court are rooted in federal procurement law, while the ones before the district court arise from alleged statutory violations of the Randolph-Sheppard Act. *Compare* Am. Compl. at 18 ("The A[rmy]'s evaluation of Mitchco's Technical proposal is unreasonable and inconsistent with the stated evaluation criteria.") (some capitalization removed), *with* District Ct. Am. Compl. at 18 ("Failure to properly consult with the Secretary of Education as required by the RSA and its implementing regulations" was a clear and prejudicial violation of the RSA). In sum, Section 1500 does not bar this court from exercising jurisdiction over ODRS' post-award protest claims, claims that are otherwise only proper if raised before this court.

### B. The Randolph-Sheppard Act and Preemption

The government also contends that the court lacks jurisdiction because of the currently pending arbitration proceedings under the Randolph-Sheppard Act. *See* Def.'s Mot. at 10-11. According to the government, the Federal Circuit requires a State Licensing Agency such as ODRS to go through the mandatory arbitration process before bringing a claim in this court.

Def.'s Mot. at 10 (quoting *Kentucky*, 424 F.3d at 1227).  Until that process is complete, argues the government, this court lacks jurisdiction and must dismiss the post-award protest action.  *Id.*

ODRS counters that "the Federal Circuit envisions dual, yet mutually exclusive paths, for an aggrieved [State Licensing Agency] to pursue depending on the complaint."  Pls.' Resp. at 8.  Plaintiffs argue that they "have a valid post-award bid protest outside the jurisdiction of an arbitration panel," *id.* at 9, and that it would be "illogical to suggest that the [Eduction Department] . . . could oversee this post-award bid protest."  *Id.* at 9-10.  And indeed, ODRS' first amended complaint scours away any reliance on the Randolph-Sheppard Act, *see, e.g.*, Am. Compl. ¶¶ 74-82, and instead strains to fit the alleged facts to claims based on federal procurement law.  Specifically, ODRS contends that Counts 2 and 3 of its amended complaint "represent traditional post-award bid protest issues that [the court] routinely considers."  Pls.' Resp. at 17.[5]  As for Count 1 of the amended complaint, ODRS claims it withdrew the "protest issue challenging [the Army's] failure to include all performance costs within the price ceiling," leaving only the "purely procurement challenge (unequal competition) to the price ceiling."  *Id.*[6]

---

[5]Count 2 of ODRS' amended complaint alleges that the Army's evaluation of Mitchco's technical proposal is "unreasonable and inconsistent with the stated evaluation criteria."  Am. Compl. at 18 (capitalizations removed).  Specifically, ODRS alleges that the Army failed to properly evaluate Mitchco's staffing plan, which according to ODRS "is unable to meet even the most basic requirements," Am. Compl. ¶ 57, because its staffing plan "failed to provide an adequate number of [full-time employees] to perform the work," Am. Compl. ¶ 62.  ODRS claims it knows the staffing numbers are inadequate because it was the incumbent contractor for more than 20 twenty years and "fully understands the staffing necessary."  Am. Compl. ¶ 61.

In addition, ODRS claims the Army erred in evaluating Mitchco's key personnel and qualifications as acceptable.  Am. Compl. ¶¶ 64-68.  According to ODRS, "Mitchco lacks the requisite corporate experience to employ, train, and retain a Project Manager, Dining Facility Manager(s), Quality/Safety Manager, and supervisory personnel with the [required] qualifications."  Am. Compl. ¶ 66.

Similarly to Count 2, Count 3 of ODRS' amended complaint alleges that the Army's evaluation of Mitchco's price proposal is "unreasonable and inconsistent with the stated evaluation criteria."  Am. Compl. at 22 (capitalizations removed).  ODRS avers that because Mitchco's technical proposal failed to include enough full-time employees to complete the contract, its "price is equally defective and incomplete."  Am. Compl. ¶ 72.  ODRS also argues that Mitchco failed to price in the cost of supplies over the life of the contract, making its price "unreasonable and incomplete."  Am. Compl. ¶ 73.

[6]Count 1 of ODRS' amended complaint alleges that the $111 million price ceiling in the Army's solicitation resulted in a "competition which was prejudicially unequal."  Am. Compl. at 15 (capitalizations removed).  According to ODRS, the $111 million price ceiling is unreasonable, as the current contract (inclusive of all four option years and the base year) "is well over the $111 million price ceiling," Am. Compl. ¶ 48, and because the new contract "requires the performance of full food services in two more dining facilities . . . [and] requires the awardee to purchase supplies."  Am. Compl. ¶ 49.

And for Count 4, ODRS contends that it "represents an independent post-award protest of the contracting agency's award decision.," *id.*,[7] because it is "protest[ing] the contracting agency's award to Mitchco and its decision to move forward with contract performance," *id.*  ORDS alternatively argues that waiver of the exhaustion requirement would also apply in this case.  *Id.* at 12-15.

The Randolph-Sheppard Act, 20 U.S.C. §§ 107-107f, was first enacted in 1936 and "established a program to promote the interests of the blind by authorizing persons to operate vending facilities in federal buildings with the goal of expanding economic opportunities available to the blind community."  *Kentucky, Educ. Cabinet, Dep't for the Blind v. United States*, 62 Fed. Cl. 445, 448 (2004), *aff'd*, 424 F.3d 1222 (citing 20 U.S.C. § 107(a)).  To accomplish this goal, the Randolph-Sheppard Act, as amended in 1974, provides blind vendors a "priority [] in operating vending facilities" on federal property.  *Id.*

The Department of Education is the agency charged with overseeing the Randolph-Sheppard Act and prescribing regulations.  *Kentucky*, 62 Fed. Cl. at 447-48 (citing 20 U.S.C. §§ 107, 107a).  But State Licensing Agencies such as ODRS are the ones "responsible for implementing the programs on a local level."  *Id.* at 448.  The state agencies "license individual blind vendors within their respective states, and manage the procurement process on behalf of the vendors."  *Id.*  In addition, the state agencies "monitor[] a contracting agency's compliance with the RSA and challeng[e] any non-compliance."  *Id.* (citing 20 U.S.C. § 107a).  Non-compliance is challenged first by arbitration, where the Department of Education convenes an *ad hoc* arbitration panel pursuant to 20 U.S.C. § 107d-2.  *Id.* at 456; *see also* 20 U.S.C. § 107d-2.  The panel's decisions are "'subject to appeal and review as a final agency action.'"  *Id.* (quoting 20 U.S.C. § 107d-2) (emphasis removed).

---

Further, ODRS contends that it was the only offeror who received information (obtained from district court pleadings related to ODRS' first TRO application) that the Army would not prohibit or penalize bids that exceeded the price ceiling.  Am. Compl. ¶¶ 50-51.  ODRS alleges that because this information was not disseminated to other offerors during the bid process, it resulted in "below cost offers."  Am. Compl. ¶ 52.  In other words, ODRS' alleged knowledge that the price ceiling was a paper tiger prejudiced it, as it felt free to bid over the $111 million ceiling, while other bidders (believing the price ceiling to be a hard cap) offered "unfeasible and impossible" proposals.  Am. Compl. ¶ 53.  Thus, ODRS argues that "the resulting evaluation and award decision was arbitrary, capricious, irrational, and inconsistent with procurement law."  Am. Compl. ¶ 54.

[7]Count 4 of ODRS' amended complaint alleges that the Army's decision to proceed with contract performance despite the pending arbitration indicates that it will not comply with the panel's decision.  Am. Compl. at 24.  And, assuming that ODRS succeeds at arbitration, the Army's alleged anticipatory failure to implement arbitral panel's eventual decision would implicate this court's jurisdiction under 28 U.S.C. § 1491(b).  Am. Compl. ¶¶ 77-78.  Put differently, ODRS contends that although review of the arbitral panel's *decision* may lie with the district court, review of the Army's *actions* regarding that decision implicate this court's jurisdiction.  Thus, according to ODRS, the Army's decision to move forward with contract performance [] is arbitrary, irrational, and inconsistent with procurement law."  Am. Compl. ¶ 82.

The case law is unequivocal that "the Court of Federal Claims lacks Tucker Act jurisdiction whenever a plaintiff alleges that a federal agency violated the Randolph-Sheppard Act or its attendant regulations and the plaintiff has yet to arbitrate those claims." *Kansas ex rel. Kansas Dep't for Children & Families*, 874 F.3d at 1243 (citing *Kentucky*, 424 F.3d at 1229) (holding that "for claims brought under the RSA, arbitration is mandatory"); *Colorado Dept. of Human Servs. v. United States*, 74 Fed. Cl. 339, 349 (2006) ("[T]he specific and comprehensive scheme provided by Congress preempts *any* Tucker Act jurisdiction that might otherwise exist.") (emphasis added)); *see also Kansas ex rel. Kansas Dep't for Children & Families v. United States ex rel. Carter*, 192 F. Supp. 3d 1184, 1194 (D. Kan. 2016) (finding that "[i]n *Kentucky*[,] the Federal Circuit concluded that a dispute alleging a[] [Randolph-Sheppard Act] violation must be arbitrated and the Court of Federal Claims lacks Tucker Act jurisdiction . . . even if the dispute, by its terms, also fits within § 1491(b) as a procurement protest.").

This case does not fit within that established pattern. It is true that ODRS originally alleged violations of the Randolph-Sheppard Act and requested injunctive relief pending arbitration with the Department of Education. This action does preclude the court from hearing any claims based on the Randolph-Sheppard Act. But those claims are before the Department of Education and potentially the district court after an arbitral decision. *See, e.g.*, District Ct. Am. Compl. ¶¶ 51-83; *see also* Def.'s Mot. App. at DA14-17. The claims before *this* court are based in federal procurement law. *See, e.g.*, Am. Compl. ¶¶ 55-82.

As demonstrated by this case, the Department of Education's arbitration process is not a swift moving one. Bid protests, by contrast, move at an expedited pace. *See* 28 U.S.C. 1491(b)(3) (stating "the need for expeditious resolution of the action" in bid protests). Requiring Randolph-Sheppard Act claims to percolate through the system before a State Licensing Agency could bring an unrelated bid protest claim could be self-defeating, where a procurement could be substantially underway or even completed before an arbitral award.

In short, the government is correct in arguing that this court cannot hear claims related to the Randolph-Sheppard Act while arbitration is pending before the Department of Education. Yet, ODRS is correct that the claims in its revised complaint in this court do not implicate the Randolph-Sheppard Act. Consequently, the court finds it has jurisdiction to hear ODRS' post-award protest claims that are unrelated to its Randolph-Sheppard Act claims pending before the arbitral panel, and then potentially before the district court. As the Federal Circuit stated in *Kentucky*, "for claims relating to procurement disputes not based on the RSA and its regulations, these would be no reason to bypass conventional bid protest and federal contract remedies in favor of arbitration by panels convened by the Secretary of Education." *Kentucky*, 424 F.3d at 1226.

## II.  TEMPORARY RESTRAINING ORDER

Having found jurisdiction, ODRS' application for a temporary restraining order is at issue. A temporary restraining order is an "'extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *GEO Grp., Inc. v. United States*, 100 Fed. Cl. 223, 226 (2011) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (additional citations omitted). To obtain this "extraordinary and drastic remedy," a party must show: "[1] it will suffer irreparable injury unless the order issues; [2] the threatened injury to it outweighs any damage to the opposing party; [3] the temporary restraining

order, if issued, will not be adverse to the public interest; [4] a substantial likelihood exists that [the party] will prevail on the merits." *Id.* (citing *Software Testing Solutions, Inc. v. United States*, 58 Fed. Cl. 533, 536 (2003)) (additional citations omitted); *see also Safeguard Base Operations, LLC v. United States*, 140 Fed. Cl. 670, 686 (2018) (citing *Trebro Mfg. Inc. v. Firefly Equip LLC*, 748, F.3d 1159, 1165 (Fed. Cir. 2014)).

The court finds factor 1 favors neither party. An irreparable injury, by definition, is one that cannot be remedied. "When assessing irreparable injury, '[t]he relevant inquiry in weighing this factor is whether plaintiff has an adequate remedy in the absence of an injunction.'" *GEO Grp.*, 100 Fed. Cl. at 228 (quoting *Magellen Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993)) (additional citation omitted). As stated, ODRS currently has arbitration pending with the Department of Education, a lawsuit based on alleged violations of the Randolph-Sheppard Act with the district court, and bid protest claims before this court. ODRS therefore has other irons in the fire to obtain relief. But ODRS does not have another remedy that would provide the immediate injunctive relief it seeks. And, ODRS claims that denying injunctive relief will result in an irreparable injury, as the teams assembled by the plaintiff-intervenors will be "destroy[ed]." Hr'g Tr. at 33:9. On the other hand, contract performance by Mitchco is already in active transition. Consequently, the court finds this factor to be neutral.

The court also finds factor 2 to weigh in favor of neither party. Factor 2 requires balancing the hardships imposed on the plaintiffs against "the harm to the government and the intervening defendant." *GEO Grp.*, 100 Fed. Cl. at 229 (quoting *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 715 (2006)) (additional citations omitted). On one hand, a genuine question of fact exists regarding the quality of services rendered by ODRS and the plaintiff-intervenors to the Army at Fort Sill. Requiring the Army to continue to use the services of ODRS could cause it harm due to the potential lower quality of service. In addition, Mitchco has begun the transition to be the service provider. This process is nearing completion and reversing the transition would likely cause disruption to both Mitchco and the Army. *See* Def.'s Mot. App. at DA24.

Nonetheless, ODRS claims that it will suffer great harm without injunctive relief. Counsel for Mr. Altstatt stated during the hearing that denying injunctive relief will severely impact Mr. Altstatt's livelihood, and that his and Cantu's teams "will be destroyed." Hr'g Tr. at 33:9-15. In other words, even if ODRS were to ultimately prevail and be re-awarded the contract, it claims the teams currently in place will be scattered and not replicable. Thus, the court finds the balance of harm to be equally split between the two parties and factor 2 to be neutral.

Unlike factors 1 and 2, factor 3 weighs against plaintiffs. Although "the public interest in honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion in evaluating a contractor's bid," *GEO Grp.*, 100 Fed. Cl. at 230 (quoting *Software Testing Solutions*, 58 Fed. Cl. at 538) (additional citations omitted), "[i]t is equally clear [] that a procuring agency should be able to conduct procurements without excessive infringement upon the agency's discretion," *id.* (citing *Aero Corp. S.A. v. United States*, 38 Fed. Cl. 237, 242 (1997)). Here, unnecessarily disrupting the food services provided to the Army would be against the public interest. Indeed, there is a strong public interest in ensuring that the men and women who serve in the military are properly and adequately fed. Any interruption to food services would be costly to the Army and detrimental to the overall

morale of the units stationed at Fort Sill. This, in turn, would reduce operational effectiveness and harm the public interest, which outweighs any current fear regarding the fairness of an agency's procurement.

Finally, for factor 4, the court is not convinced that ODRS can show a substantial likelihood that it will prevail on the merits. The district court twice found ODRS' arguments in favor of temporary injunctive relief to be unpersuasive. In this court, "[i]t is the burden of the aggrieved bidder to demonstrate that the challenged agency decision is either irrational or involved a clear violation of applicable statutes and regulations." *GEO Grp.*, 100 Fed. Cl. at 226-27 (citing *Seattle Sec. Servs., Inc. v. United States*, 45 Fed. Cl. 560, 566 (2000)) (additional citations omitted). This is a high burden, as "'to prevail in a protest the protestor must show not only a significant error in the procurement process, but also that the error prejudiced it.'" *Id.* (quoting *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996)). Here, as in the district court, ODRS has not shown a substantial likelihood of prevailing on the merits. ODRS is challenging areas of significant agency discretion, such as technical evaluations. *See, e.g.*, Am. Compl. ¶¶ 46-74. ODRS' complaint sets out numerous conclusory allegations, such as that "Mitchco submitted a staffing plan which failed to provide an adequate number of [full-time employees] to perform the work," Am. Compl. ¶ 62, that do not allow the court to find that injunctive relief is warranted.

In sum, the court finds that two factors are equivocal between the parties and two factors weigh against plaintiffs. According, the court will not grant ODRS preliminary injunctive relief.

## CONCLUSION

For the reasons set forth above, defendants' motions to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) are DENIED. Correspondingly, plaintiffs' application for a temporary restraining order is DENIED, as is plaintiffs' motion for a preliminary injunction.

The parties are requested to file a joint status report on or before August 23, 2019, setting out a plan and proposed schedule for further proceedings.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge

14